# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

VICTORIA P. WISSWELL,

     **Plaintiff,**

                              **Civil Action 2:16-cv-1195**
vs.                        **Judge George C. Smith**
                              **Magistrate Judge Elizabeth P. Deavers**

COMMISSIONER OF SOCIAL SECURITY,

     **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Victoria P. Wisswell, brings this action under 42 U.S.C. §§ 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income. This matter is before the Chief United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 8), the Commissioner's Memorandum in Opposition (ECF No. 11), and the administrative record (ECF No. 4). Plaintiff did not file a Reply. For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## I.    BACKGROUND

Plaintiff applied for supplemental security income in August 2013 asserting disability from cerebral palsy and seizure disorder. (R. at 193.) Plaintiff's claim was denied initially and upon reconsideration. Upon request, a hearing was held September 18, 2015, at which Plaintiff, represented by counsel, appeared and testified. (R. at 26-57.) A vocational expert also appeared

and testified at the hearing.  (R. at 51-54.)  On December 1, 2015, ALJ Lloyd Hubler issued a

decision finding that Plaintiff was not disabled at any time from August 20, 2013, the date the

application was filed  (R. at 9-21.)   On October 24, 2016, the Appeals Council denied Plaintiff's

request for review and adopted the ALJ's decision as the Commissioner's final decision.  (R. at

1-3.)

## II. HEARING TESTIMONY

### A.  Plaintiff's Testimony

At the September 2015 administrative hearing, Plaintiff testified that she is twenty-five

years old, single, and lives with her brother and mother.  (R. at 31-32.)  Plaintiff also testified

that she has never held a driver's license, graduated high school, and dropped out of community

college after one semester.  (R. at 32-33.)  Plaintiff further testified that she had cerebral palsy

since she was a small child.  (R. at 34.)

Plaintiff stated that she has difficulty walking because of her cerebral palsy and that her

"left side is pretty much useless . . . .  It's extremely weak.  I walk with a limp.  I'm very prone to

falling."  (R. at 35.)  Plaintiff also stated that she fell on her way to the hearing, but that she does

not use a cane or a walker because she usually catches herself.  (*Id*.)  According to Plaintiff, her

doctor has not recommended using a cane.  (*Id*.)  Plaintiff further stated that she can walk two or

three yards before taking a break and that she can hold something in her left hand "only for a few

moments" before dropping it involuntarily.  (R. at 36.)  Plaintiff testified that about twice weekly

she gets pains in her left leg "where the thigh connects to the hip, like it's going to pop out" that

last all day.  (R. at 48.)  According to Plaintiff, she has had these symptoms "all my life," and

they have neither worsened nor improved.  (R. at 36.)  Plaintiff testified that she received

physical therapy as a child to help her walk, but that she does not currently receive treatment because there is none for cerebral palsy. (R. at 37.)

Plaintiff testified that she began suffering seizures at the age of four and was diagnosed with epilepsy. (*Id*.) Plaintiff also testified that she had grand mal seizures again five years later "where I completely lose consciousness and just shake everywhere." (*Id*.) Plaintiff further testified that she had "several more" seizures since from then end of 2011 through 2013 and takes various medications to control them. (*Id*.) Plaintiff stated that her medications cause memory problems and make her "extremely tired." (*Id*.) Plaintiff reported that she forgets simple instructions after ten minutes (R. at 42.) Plaintiff testified that she could follow a written list of instructions but opined that she would probably forget where she put the list. (R. at 43.) According to Plaintiff she "cannot go throughout the day without taking some kind of nap." (R. at 37.) Plaintiff testified that her naps can last up to six hours. (R. at 38.) Plaintiff stated that she dislocated her jaw as a result of a seizure in 2013. (R. at 38.)

Plaintiff testified that she continues to suffer petit mal seizures approximately three times per month. (R. at 39.) Plaintiff stated that when she has a petit mal seizure she loses control of her hand, foot, or other localized muscle group. (R. at 39.) Plaintiff also testified that she suffers anxiety when underneath a very tall ceiling, such as a shopping mall, Home Depot, or Lowe's and that she fears social interaction, although she socializes with her brother's friends. (R. at 40, 50.) Plaintiff stated that she received no treatment for her anxiety. (R. at 41.)

Plaintiff stated that she could lift, just on occasion, "[n]othing more than 10 pounds and that's pushing it." (R. at 42.) Plaintiff also stated that she usually goes to bed around one o'clock in the morning and gets out of bed at noon. (R.at 44.) Plaintiff further stated that she does household chores, takes care of two cats, watches television, and uses the internet. (R. at

3

44-45.)  According to plaintiff, she has difficulty vacuuming and typing.  (R. at 45.)  Plaintiff testified that she doesn't have friends because she moved to her current home at the age of twenty and can only go out of the house if someone drives her.  (R. at 45-46.)

**B.  Vocational Expert Testimony**

The ALJ proposed a series of hypotheticals regarding Plaintiff's residual functional capacity ("RFC") to the VE.  (R. at 52-53.)  Based on Plaintiff's age, education, and work experience and the RFC ultimately determined by the ALJ, the VE testified that Plaintiff could perform jobs available in the national economy, including mail clerk, routing clerk, and inspector.  (R. at 52.)  If limited to sedentary work, the VE testified that the hypothetical person could perform jobs available in the national economy, including inspector, sorter, and bench assembler.  (R. at 53.)  The VE testified that if the hypothetical person were restricted to occasional use of the left upper extremity or was off-task more than ten percent of the work day, it would be work preclusive.  (R. at 53-54.)

### III.  MEDICAL RECORDS

**A.  Children's Hospital of Michigan**

On May 1, 2000, Plaintiff saw Charles Pelshaw, M.D.  Treatment notes indicate Plaintiff is able to walk, run, and ride a bike.  (R. at 417.)  Dr. Pelshaw noted that Plaintiff can draw pictures and color, as well as dress herself, although she usually gets help because of how long it takes her.  (*Id*.)  Dr. Pelshaw observed that Plaintiff "pronates bilaterally, left foot greater than right, with decreased heel strike on left."  (*Id*.)  Dr. Pelshaw also observed that Plaintiff has "bilateral hamstring tightness.  Her hamstrings lacked approximately 25 to 30 degrees, left side greater than right."  (*Id*.)   April 26, 2000 treatment notes indicate Plaintiff has problems with upper extremity coordination.  (R. at 243.)

**B. Macomb Intermediate School District**

On October 2, 2001, Plaintiff saw Amy Brown, OTR, who subsequently made an occupational therapy report. Ms. Brown stated that, although Plaintiff had increased muscle tone in her left upper extremity, "[b]ecause of her muscle tone, she has difficulty performing fine motor tasks." (R. at 278.) Ms. Brown also stated that Plaintiff's hand strength is "below expect range, but is functional for school tasks." (R. at 278.) Ms. Brown concluded that Plaintiff is "functionally independent in her school environment" and recommended continued physical therapy. (R. at 277.)

On June 5, 2002, Maria Weekhout, PT, made a physical therapy year-end summary of Plaintiff's progress. Ms. Weekhout stated that Plaintiff is "independent in her school environment with some adaptations," including a centralized locker, additional time between classes, her own set of books in each class, and a "buddy" to help her with certain programs. (R. at 276.) Plaintiff reported no problems travelling from class to class or to the lunch room. (*Id.*) Ms. Weekhout characterized Plaintiff's range of motion as "functional" and her balance as "fair to good." (*Id.*) Ms. Weekhout reported that Plaintiff has "some difficulties in crowded halls." (*Id.*)

**C. Christian R. Barrett, Ed.D.**

On February 18, 2003, Dr. Barrett, a licensed psychologist, conducted a psychological evaluation of Plaintiff. Dr. Barret found Plaintiffs drawings "positive for soft neurological signs" and stated that her "[e]ye-hand coordination and execution are very slow and labored." (R. at 246.) He also characterized Plaintiff's fine motor dexterity as "significantly below average." (*Id.*) Dr. Barret opined that she is "consistently handicapped in all tasks with time limits requiring motor execution." (R. at 247.) Dr. Barrett also opined that Plaintiff "will

continue to require additional time to complete assignments.  She also benefits from close

structure to limit her impulsiveness and distractibility."  (*Id.*)

**D.  Richmond Community Schools**

A March 15, 2007, progress report indicates that Plaintiff "has trouble with gross and fine

motor skills" and receives the following accommodations: extended deadlines, worksheets that

require minimal writing, extra time to get to class, and computer use for notetaking, tests, and

assignments.  (R. at 251, 253.)

**E.  Mary Rutan Hospital**

On May 28, 2013, Plaintiff sought treatment for a dislocated mandible that resulted from

a grand mal seizure while sleeping.  (R. at 305, 315.)  Plaintiff was transferred to the Ohio State

University hospital for treatment, which ultimately included sedation in order to reposition

Plaintiff's mandible.  (R. at 327.)

**F.  George O. Schulz, Ph.D.**

On November 6, 2013, non-treating consultative examiner, Dr. Schulz, saw Plaintiff and

conducted a psychological evaluation.  Dr. Schulz reported that Plaintiff's mother drove her to

the appointment.  (R. at 339.)  Plaintiff told Dr. Schulz that she usually goes to bed around one

o'clock in the morning and gets up around noon.  (*Id.*)  According to Plaintiff, on a normal day,

she has breakfast, takes her medicine, watches television, and takes care of her cats.  (*Id.*)

Plaintiff reported that she likes listening to music and reading, does her own laundry, prepares

her own meals, uses a stove and microwave, makes her own purchases, and uses a computer and

email.  (*Id.*)  Plaintiff also reported that she does not participate in community events, but she

does socialize with friends approximately once per month, and gets along well with neighbors,

store clerks, and public officials. (*Id.*) Plaintiff told Dr. Schulz that "being in a big area or a very small area" causes her stress. (*Id.*)

Dr. Schulz opined that Plaintiff is able to manage her own funds and can understand and apply instructions "within the low average range of intellectual functioning." (R. at 342.) Dr. Schulz also opined that she is "capable of completing routine or repetitive [activities of daily living] tasks . . . on a job setting. . . . [And] objective changes at a level prompting concerns by employers are not to be expected." (*Id.*) Dr. Schulz further opined that Plaintiff is able to respond appropriately to coworkers and supervisors in a work setting and respond appropriately to work pressure. (R. at 342-343.)

## G. Ryan Kauffman, M.D.

Plaintiff saw Dr. Kauffman routinely from 2012 through 2015. On September 7, 2012, Dr. Kauffman reported that Plaintiff had not had any seizures since beginning her medications, although they make her "very tired." (R. at 368.) On May 28, 2013, Dr. Kauffman reported that Plaintiff suffered a grand mal seizure on May 25, 2013, that resulted in a dislocated mandible. (R. at 367.) On August 22, 2013, Dr. Kauffman reported that Plaintiff "has been having a seizure about every other month." (*Id.*) He also reported that Plaintiff "bit her tongue" as a result of a seizure in July and that she occasionally has "a partial seizure." (*Id.*)

On August 21, 2014, Dr. Kauffman reported that Plaintiff "has had issues with anxiety for a long time" and has "an occasional anxiety attack." (R. at 365.) He also reported that Plaintiff "has not had any recent generalized seizures." (*Id.*) On March 4, 2015, Dr. Kauffman noted that Plaintiff "has been having more issues with tightness in the shoulders and upper back." (*Id.*) He also noted that she is experiencing "fewer of her partial seizures" and no generalized seizures that she is aware of. (*Id.*)

**H. State Agency Review**

On November 12, 2013, Karen Terry, Ph.D., reviewed Plaintiff's record for the state agency pursuant to her application for benefits. Dr. Terry, noting Plaintiff's reports of anxiety and panic attacks, found her mental impairments "not severe." (R. at 65.) On March 18, 2014, state agency psychological consultant Paul Tangerman, Ph.D. affirmed Dr. Terry's opinion upon reconsideration. (R. at 77-78.)

On November 27, 2013, non-treating state agency medical consultant Edmond Gardner, M.D. opined that Plaintiff is limited to work at the light exertional level, with limitation to frequent climbing of ramps and stairs and balancing, no climbing of ladders, ropes, or scaffolds, and no exposure to hazards. (R. at 66-67.) On March 16, 2014, non-treating state agency medical consultant Leslie Green, M.D., upon reconsideration, opined that Plaintiff is limited to light work, occasional balancing and climbing of ramps and stairs, no climbing of ladders, ropes, or scaffolds, occasional crawling, no concentrated exposure to vibration, and no exposure to hazards. (R. at 79-80.)

## IV. THE ADMINISTRATIVE DECISION

On December 1, 2015, the ALJ issued his decision. (R. at 9-21.) At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantially

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.     Is the claimant engaged in substantial gainful activity?
2.     Does the claimant suffer from one or more severe impairments?
3.     Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.     Considering the claimant's residual functional capacity, can the claimant

gainful activity since August 20, 2013, the application date.  (R. at 14.)  The ALJ found that

Plaintiff has the following severe impairments: cerebral palsy, seizure disorder, epilepsy.  (*Id.*)

He further found that Plaintiff did not have an impairment or combination of impairments that

met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart

P, Appendix 1.  (R. at 16.)  At step four of the sequential process, the ALJ set forth Plaintiff's

RFC as follows:

> [C]laimant has the residual functional capacity to perform light work as defined in
> 20 CFR 416.967(b) except the claimant is limited to lifting and carrying 20
> pounds occasionally and 10 pounds frequently; standing and walking six hours;
> sitting six hours; and no climbing of ladders ropes, or scaffolds.  The claimant can
> occasionally perform climbing of ramps and stairs, balancing, or crawling.  The
> claimant can perform no work around hazardous moving machinery, no work at
> unprotected heights, and no commercial driving.

(R. at 16.)  In determining Plaintiff's MRFC, the ALJ gave little weight to Dr. Schulz's opinion

testimony regarding Plaintiff's ability to follow instructions.  (R . at 19.)  The ALJ also gave

little weight to Dr. Barriff's opinion testimony because it predated Plaintiff's application by ten

years.  (*Id.*)  The ALJ gave significant weight to Dr. Gardner's opinion evidence, although the

ALJ found it "underestimate[s] the effect of the claimant's cerebral palsy on her ability to

perform postural tasks."  (*Id.*)  The ALJ gave great weight to the opinions of Dr. Green, Dr.

Terry, and Dr. Tangerman because they are consistent with the overall record, including

Plaintiff's treatment history.  (*Id.*)

   The ALJ concluded that Plaintiff has no relevant past work.  (*Id.*)  Relying on the VE's

testimony, the ALJ determined that Plaintiff could perform at least three jobs that exist in the

---

                        perform his or her past relevant work?

     5.       Considering the claimant's age, education, past work experience, and residual
               functional capacity, can the claimant perform other work available in the national
               economy?

*See* 20 C.F.R. §416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009);
*Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

local and national economy: mail clerk, routing clerk, and inspector.  (R. at 20.)  The ALJ also noted that the VE testified that a person under Plaintiff's circumstances could perform approximately 2,000,000 jobs available in the national economy.  (*Id*.)  He therefore concluded that Plaintiff was not disabled under the Social Security Act since August 20, 2013, the application date.  (R. at 21.)

## VI.   STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial.  The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'"  *Blakley*

*v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI. ANALYSIS

Plaintiff puts forward two assignments of error. Plaintiff first contends that the ALJ failed to include a limitation to "occasional use of the left upper extremity" in his RFC. (ECF No. 8 at 3.) Second, Plaintiff argues that the ALJ failed to include a limitation of off-task more than 10% of the workday and absent one day per month. (*Id*. at 4-5.)

Plaintiff bears the burden of providing the necessary medical evidence to demonstrate her impairments cause functional limitations resulting in disability. 20 C.F.R. §404.1512(c). Where the ALJ has properly considered Plaintiff's evidence and substantial evidence supports his conclusion, "this Court will defer to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005.)

## A. Use of Left Upper Extremity

Plaintiff contends that the ALJ's RFC determination is flawed because it contains no limitation to "occasional use of the left upper extremity." (ECF 8 at 3.) Plaintiff argues that medical treatment notes and her testimony at the administrative hearing establish the proposed limitation. (*Id*.)

A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a). The determination of RFC is an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e), 416.927(e). Nevertheless, substantial evidence must support the Commissioner's RFC finding. *Berry v. Astrue*, No. 1:09CV000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010). When considering the medical evidence and calculating the RFC, "'ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.'" *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)); *see also Isaacs v. Astrue*, No. 1:08–CV–00828, 2009 WL 3672060, at *10 (S.D. Ohio Nov. 4, 2009) (holding that an "ALJ may not interpret raw medical data in functional terms") (internal quotations omitted).

An ALJ is required to explain how the evidence supports the limitations that he or she set forth in the claimant's RFC:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

S.S.R. 96–8p, 1996 WL 374184, at *6–7 (internal footnote omitted).

Here, substantial evidence supports the ALJ's assessment of Plaintiff's RFC. For instance, in 2000, Dr. Pelshaw indicated that Plaintiff is able to ride a bicycle. (R. at 417.) Dr.

12

Pelshaw also noted that Plaintiff can dress herself, although it takes her longer than others. (*Id.*) Dr. Pelshaw further noted that Plaintiff has problems with upper extremity coordination. (R. at 243.) Plaintiff underwent occupational therapy to improve her upper extremity coordination going back to at least the early 2000s. (R. at 278.) Ms. Brown indicated in October 2001 that Plaintiff's hand strength "is functional for school tasks" and concluded that Plaintiff is "functionally independent in her school environment." (R. at 277-278.) In June 2002, Ms. Weekhout also characterized Plaintiff as "independent in her school environment with some adaptations," only one of which—the provision of set-aside books in each classroom for Plaintiff's personal use—could have tangentially accommodated some limited use of upper extremities. (R. at 276.) Ms. Weekhout characterized Plaintiff's range of motions as "functional." (*Id.*) Plaintiff's accommodations in 2007 did not include any for limited use of upper extremities. (R. at 251, 253.) In March 2015, Dr. Kauffman noted that Plaintiff complained of tightness in the shoulders and upper back. Notably, however, Dr. Kauffman did not opine as to any limitations this tightness might cause, and he did not quantify the extent of muscle tightness Plaintiff experienced. (R. at 365.) All of the state agency consultants opined that Plaintiff can perform work at the light exertional level with no restrictions as to upper extremity use. (R. at 66-67, 79-80.)

The record reflects that Plaintiff experiences symptoms that affect her left upper extremity more than her right. The record also reflects, however, that Plaintiff was functional in her school environment with minimal accommodations for limited upper extremity use. Importantly, Plaintiff, who bears the burden, points to no treatment notes or occupational therapy reports to indicate limitations greater than that adopted by the ALJ. Plaintiff counters that the record is incomplete in this respect and does not reflect her actual level of limitation because

"cerebral palsy has no treatment," and Plaintiff, therefore, had few occasions to see her doctors. (ECF No. 3 at 6.) Although it may be true that Plaintiff had limited contact with her doctors, the burden of establishing disability lies with the claimant. 20 C.F.R. §404.1512(c). Moreover, what evidence does exist in the record supports the ALJ's RFC determination. Thus, the Undersigned concludes that the RFC provides sufficient limitations to account for all of Plaintiff's impairments.

Plaintiff contends that her testimony to the effect that her left side is "useless" and she could only hold objects in her left hand "for only a few moments" sufficiently demonstrates the need to incorporate additional limitations into the RFC. Plaintiff's testimony, however, is insufficient to establish disability. 20 C.F.R. § 416.929(a) ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled.") To the extent Plaintiff contends that the ALJ discounted her testimony in this regard, "[t]he ALJ's assessment of credibility is entitled to great weight and deference, since he had the opportunity to observe the witness's demeanor." *Infantado v. Astrue*, 263 F. App'x 469, 475 (6th Cir. 2008) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)); *Sullenger v. Comm'r of Soc. Sec.*, 255 F. App'x 988, 995 (6th Cir. 2007) (declining to disturb the ALJ's credibility determination, stating that: "[w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility" (citation omitted)). Despite this deference, "an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters*, 127 F.3d at 531. Furthermore, the ALJ's decision on credibility must be "based on a consideration of the entire record." *Rogers*, 486 F.3d at 247 (internal quotation omitted). An ALJ's explanation of his or her credibility decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the

reasons for that weight." *Id.* at 248; *see also Mason v. Comm'r of Soc. Sec. Admin.*, No. 1:06–CV–1566, 2012 WL 669930, at *10 (N.D. Ohio Feb. 29, 2012) ("While the ALJ's credibility findings 'must be sufficiently specific', *Rogers*, 486 F.3d at 248, the intent behind this standard is to ensure meaningful appellate review.").

Here, the ALJ's credibility determination is consistent with the medical reports and other objective evidence in the record. Further, Plaintiff's reported activities of daily living include household chores such as cooking, doing dishes, taking care of her cats, and doing laundry, which are not consistent with Plaintiff's proposed limitation or with the other substantial evidence in the record. The ALJ's credibility determination, therefore, is entitled to great deference. *Infantado*, 263 F. App'x 475.

For these reasons, the Undersigned finds the ALJ's RFC determination with respect to Plaintiff's left upper extremity use to be supported by substantial evidence. Plaintiff's first contention of error, therefore, is without merit.

**B. Plaintiff's Attendance and Ability to Remain On-Task**

Plaintiff also contends that the ALJ erred by failing to include limitations of off-task more than 10% of the time and absent one day per month. (ECF No. 8 at 4.) Plaintiff argues that side effects from Plaintiff's anti-seizure medication will cause her to be off-task more than 10% of the day. (*Id.*) Plaintiff also argues that her seizure disorder will cause her to miss more than one day of work per month. (ECF No. 8 at 4-5.)

None of Plaintiff's school records indicate problems with being off task or excessive absences, although her seizure disorder was reported as only "partial-well controlled" in 1999. (ECF No. 270.) In May 2013, Plaintiff suffered a grand mal seizure so severe that it dislocated her jaw, which could not be relieved for three days. (R. at 367.) Dr. Kauffman's treatment notes

also reveal, however, that Plaintiff had not had any grand mal seizures as of August 2014 and experienced fewer petit mal seizures as of March 2015, indicating that her medication effectively controls her seizure disorder.  (R. at 365.)  Plaintiff testified at the administrative hearing that she experiences approximately three petit mal seizures per month, the effects of which last from a few minutes up to one hour.  (R. at 39, 51.)

With respect to her medication side effects, Plaintiff admits that her excessive drowsiness is "not specifically documented in the medical records."  (ECF No. 8 at 4.)  The only evidence in the record supporting Plaintiff's claim is her testimony at the administrative hearing and a statement to Dr. Schulz that she is "tired all the time due to medications."  (R. at 37-38; 338.)  Dr. Schulz, however, in opining as to Plaintiff's functional limitations, did not indicate that Plaintiff would be off-task a significant amount of time and found her "alert and responsive."  (R. at 341-343.)

As with Plaintiff's proposed upper extremity limitation, the record here supports the ALJ's RFC determination.  What objective evidence exists in the record supports the ALJ's conclusion that Plaintiff will not be off-task more than 10% of the time or miss one day of work per month.  With respect to Plaintiff's credibility, substantial evidence also supports the ALJ's evaluation.  Plaintiff's testimony conflicts with the factual record, and no opinion source supports any of Plaintiff's proposed restrictions.  The ALJ's credibility determination, therefore, is entitled to great deference.  *Infantado*, 263 F. App'x 475.

For these reasons, the Undersigned finds the ALJ's RFC determination with respect to Plaintiff's attendance and ability to remain on-task to be supported by substantial evidence.  Plaintiff's second contention of error, therefore, is without merit.

## VII.   CONCLUSION

In conclusion, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits.  Accordingly, the Undersigned **RECOMMENDS** that the Commissioner of Social Security's decision be **AFFIRMED** and Plaintiff's Statement of Errors be **OVERRULED**.

## IX.   PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date: February 5, 2018         */s/ Elizabeth A. Preston Deavers*
ELIZABETH A. PRESTON DEAVERS
UNITED STATES MAGISTRATE JUDGE